IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

DARRYL ADAMS,
   *Defendant*.

Criminal No. ELH-19-0286

### MEMORANDUM OPINION

Defendant Darryl Adams has filed "Defendant's Second Motion For Reduction Of Sentence Pursuant To 18 USC § 3582(c)(1)(A)((i) AND USSG § 1B1.13(b)(5)." ECF 1445. Adams, who is pro se, has also filed correspondence with exhibits, docketed at ECF 1446. I shall consider the submissions (ECF 1445, ECF 1446) collectively as the "Motion" or the "Second Motion".

The Office of the Federal Public Defender ("FPD") has notified the Court that it declines to represent defendant as to the Second Motion. ECF 1480. The government opposes the Second Motion. ECF 1504. Defendant has not replied.

No hearing is necessary to resolve the Second Motion. For the reasons that follow, I shall deny the Motion.

        **I.**        **Background**

Defendant Adams and eighteen others were indicted on June 11, 2019, and charged with various drug and firearm offenses. ECF 1. On June 25, 2019, the grand jury returned a thirty-count Superseding Indictment, in which Adams and twenty-four co-conspirators were charged with multiple offenses. Of relevance here, Adams was charged in Count One with conspiracy to distribute and possess with intent to distribute one kilogram or more of a substance containing heroin; a substance containing fentanyl; five kilograms or more of a substance containing cocaine;

and 280 grams or more of a substance containing cocaine base, in violation of 21 U.S.C. § 846. He was also charged in Count Two with possession with intent to distribute cocaine, heroin, and fentanyl, in violation of 21 U.S.C. § 841(a)(1).

Pursuant to a Plea Agreement (ECF 1028), Adams entered a plea of guilty on April 13, 2021 (ECF 1018), to Counts One and Two of a Superseding Information (ECF 1010). Count One charges conspiracy to distribute and possess with the intent to distribute a quantity of a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 846. Count Two charges that on August 2, 2018, defendant possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841. Each offense carries a maximum sentence of twenty years of imprisonment. *Id.* ¶ 3. Pursuant to Fed. R. Crim. P. 11(c)(1)(C) ("C Plea"), the parties agreed to a total sentence ranging between 48 months and 84 months of imprisonment, *i.e.*, four to seven years. ECF 1028, ¶ 9.

The Plea Agreement contained a lengthy and agreed Statement of Facts. *Id.* at 11-12. Among other things, the factual stipulation reflects that the Drug Enforcement Administration and the Baltimore City Police Department conducted authorized interception of wire and electronic communications and conducted undercover drug transactions. In particular, Adams sold drugs to undercover detectives on five occasions. *Id.* He stipulated, in part, *id.* at 11:

> Beginning in July 2018, or earlier, the defendant, Darryl Adams ("Adams") engaged in a conspiracy to distribute controlled substances, including fentanyl, heroin, cocaine, and cocaine base in Baltimore City, Maryland. The defendant agreed with the various coconspirators to acquire these controlled substances and to assist in distributing those controlled substances to other persons.

In the Plea Agreement the parties agreed that, under the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G."), defendant had an offense level of 30 and a criminal history category of either IV or V. ECF 1028, ¶¶ 6(c), 7. After deductions for acceptance of responsibility, pursuant

to U.S.S.G. § 3E1.1, the parties agreed that defendant had a final adjusted offense level of 27. *Id.* ¶ 6(d).

The Presentence Report (ECF 1132, "PSR") reflected that in 2019 Adams was convicted in the Circuit Court for Baltimore City of possession with intent to distribute narcotics, in case 079017011. *Id.* ¶ 37. He received a sentence of six years of incarceration on May 2019. *Id.* In addition, defendant was convicted in 2017 of a handgun offense and possession with intent to distribute narcotics. He was sentenced to a term of twelve years' incarceration, of which eight years were suspended, with two years of probation. *Id.* ¶ 36. Adams violated his probation and, on May 29, 2019, he was sentenced to six years of incarceration. *Id.*

In total, defendant had twelve criminal history points. *Id.* ¶¶ 38-40. This equated to a criminal history category of V. *Id.* ¶ 40.[1]

With a final offense level of 27 and a criminal history category of V, the PSR determined that, under the Guidelines, defendant had an advisory sentencing range of 120 months to 150 months of imprisonment. *Id.* ¶ 97. As noted, the C Plea called for a sentence ranging from 48 to 84 months of imprisonment. ECF 1028, ¶ 9. Thus, the top of the C Plea range was well below the bottom of the Guidelines range.

Sentencing was held on June 1, 2021. ECF 1131. Adams was 36 years old at the time. ECF 1132 at 3. The Court imposed a sentence of 72 months as to Count One and a concurrent term of 72 months as to Count Two, for a total term of 72 months of imprisonment. Notably, defendant's sentence was to run concurrent with the State sentence he was then serving in regard

---

[1] Two points were added to defendant's criminal history score because he committed the instant offense while under supervision for three prior offenses. ECF 1132, ¶ 39. Under the current Guidelines, however, only one status point would be added. *See* U.S.S.G. § 4A1.1(e). Nonetheless, even with eleven criminal history points, rather than twelve, defendant's criminal history category would remain a V.

3

to his 2019 conviction in the Circuit Court for Baltimore City under case number 079017011. ECF 1133 at 2.

Of relevance, the Court intended for defendant to receive credit for the time that defendant was detained in federal custody prior to sentencing. And, the Court and the parties held the erroneous belief that federal detention began on August 9, 2019. *See* ECF 1421 at 2 n.1; ECF 1133. In the Judgment (ECF 1133), the Court specified that defendant was to receive credit for his pretrial federal detention, dating to August 9, 2019. *Id.* at 2. However, federal detention actually began on September 6, 2019. *See* ECF 293; ECF 297.

On April 4, 2023, Adams filed a pro se "Motion For Reduction Of Sentence Pursuant To 18 USC § 3582(c)(1)(a)(i)." ECF 1415. Then, on June 12, 2023, through counsel, the Court received a "Joint Motion For Reduction Of Sentence," pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 1421 ("Joint Motion"). In the Joint Motion, counsel asked the Court to reduce defendant's sentence from 72 months to 51 months of imprisonment, based on "extraordinary and compelling reasons." ECF 1421 at 1.

In particular, counsel explained that, contrary to the expectation of the Court and the parties, the Bureau of Prisons ("BOP") did not credit defendant with the time dating from his initial appearance in federal court, when federal detention was ordered. As noted, that date is September 6, 2019. ECF 293; ECF 297. As a result of BOP's decision, the parties indicated that defendant's sentence was, in effect, increased by 21 months. ECF 1421 at 3.

Moreover, defendant exhausted his remedies. He had made a request to the Warden on March 2, 2023, to reduce his sentence by 21 months. ECF 1415-1 at 3. However, the Warden denied the request on March 15, 2023. *Id.* at 1-2. Thus, in the Joint Motion, defendant asked that the Court to reduce his sentence by the 21 months that the BOP refused to credit him. ECF 1421.

4

By Order of June 13, 2023 (ECF 1423), I granted the Joint Motion, thereby reducing defendant's total sentence from 72 months to 51 months of incarceration. *See* Judgment (ECF 1133); Amended Judgment (ECF 1424).[2] The Second Motion followed on January 18, 2024. ECF 1445.

Since the filing of the Second Motion, defendant has been released to a residential reentry facility. He has a projected release date of January 10, 2025. *See* https://www.bop.gov/inmateloc/

In the Second Motion, defendant explains that the BOP initially determined that he was entitled to pretrial credit for the period of December 23, 2018 to May 28, 2019. ECF 1445 at 2; ECF 1445-1 at 1. According to defendant, after the Court granted the Joint Motion, BOP credited defendant for the period of August 9, 2019 to May 31, 2021. But, it revoked 157 days of credit for the period of December 23, 2018 to May 28, 2019. ECF 1445 at 3; ECF 1445-1 at 4; ECF 1446-1.

Therefore, defendant asks the Court to reduce his sentence "by 157 days." ECF 1445 at 1. He claims that the BOP "has breached the settlement agreement that led to the Court's entry of the agreed order of June 13, 2023, by revoking 157 days of credits whose continuing grant was implicit in the settlement. See Doc 1423." *Id.* at 1. According to Adams, the BOP did not "comply with the Court's order to credit [the defendant] for time spent in custody from August 9, 2019, to May 31, 2021." *Id.*

## II. Legal Standard

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed."

---

[2] The Amended Judgment specifies that the sentence was to run concurrent with defendant's State sentence. ECF 1424 at 2. However, it does not mention credit for pretrial detention. In contrast, the original Judgment (ECF 1133) provided for credit for time served in federal custody since August 9, 2019. *Id.* at 2.

5

18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). It is commonly termed the "'compassionate release exception.'" *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction." *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL

6

5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, the BOP rarely filed such a motion on an inmate's behalf. As a result, compassionate release was an infrequent occurrence. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act ("FSA"), *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173. In particular, a federal inmate is now able to file a motion for compassionate release directly with the court, as long as the inmate first exhausts administrative remedies. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020). In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.

However, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually consists of two parts.  The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step.  Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable."  *Bethea*, 54 F.4th at 831; *see Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330.  "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis."  *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis."  *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647.  Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion."  *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

8

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted). As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023) (emphasis added). Therefore, the Policy Statement is now applicable to defendant-filed motions under § 3582(c)(1)(A). *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the

9

petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction"). As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

> The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):
>
> (B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> > (1) (A) extraordinary and compelling reasons warrant the reduction; or
> >
> > (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> >
> > (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's

age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[3]

---

[3] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

11

Under § 3582(c)(2), a defendant may be eligible for relief if an amendment to the Guidelines has been made retroactively applicable. *United States v. Riley*, ELH-13- 0608, 2022 WL 9361679, at *5 (D. Md. Oct. 14, 2022) (citing *Dillon v. United States*, 560 U.S. 817, 826 (2010)). One such retroactive amendment is Amendment 821 to the Sentencing Guidelines, which went into effect on November 1, 2023. Amendment 821, U.S. SENT'G COMM'N, https://www.ussc.gov/guidelines/amendment/821.

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. §994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Amendment 821 "is a multi-part amendment." *United States v. Gary*, JKB-08-086, 2024 WL 1641007, at *1 (D. Md. Apr. 16, 2024). Part A pertains to criminal history and "status points." *Id.* Criminal history points determine a defendant's criminal history category. Under Amendment 821, if a defendant has seven or more criminal history points, and he committed the instant offense while under any criminal justice sentence, such as parole, probation, or supervised release, one point is added. U.S.S.G. § 4A1.1(e). In contrast, prior to the amendment, a defendant under supervision was subject to a two-point increase. Notably, the amendment eliminated any status points for a defendant on supervision but who "has six or fewer criminal history points." *Id.*; *see*

12

*also United States v. Law*, DKC-11-489, 2024 WL 3757902, at *1 (D. Md. Aug. 12, 2024) ("Part A . . . eliminated status points altogether for a defendant with six or fewer criminal history points.").

Part B provides for a deduction of two offense levels if ten conditions are met, U.S.S.G. 4C1.1(a):

> **(1)** the defendant did not receive any criminal history points from Chapter Four, Part A;
> **(2)** the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
> **(3)** the defendant did not use violence or credible threats of violence in connection with the offense;
> **(4)** the offense did not result in death or serious bodily injury;
> **(5)** the instant offense of conviction is not a sex offense;
> **(6)** the defendant did not personally cause substantial financial hardship;
> **(7)** the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> **(8)** the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
> **(9)** the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
> **(10)** the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848[.]

Even if a defendant prisoner establishes that extraordinary and compelling reasons warrant relief, a reduced sentence does not necessarily follow. The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon*, 560 U.S. at 826–27; *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when

13

considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)). As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500). The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered

the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*). In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid

15

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative. The *Davis* Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654–55. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661. According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.* Further, the Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)). The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial." *Id.* at 661 (*citing Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### III. Discussion

In the Joint Motion, the parties agreed that the Court's intent at the time of sentencing was to credit the defendant with time he served as of the date of his initial appearance in federal court,

at which time he was detained. That date is September 6, 2019.[4] However, the BOP did not award that credit. Therefore, the government joined with the defendant in seeking a 21-month sentence reduction for defendant. The Court granted the Joint Motion and reduced the defendant's sentence from 72 months to 51 months of imprisonment, to account for the time that BOP declined to award in pretrial credit. ECF 1421-1; ECF 1504 at 2; *see also* ECF 1133; ECF 1424.

Defendant now complains that, in response to the 21-month sentence reduction that he received, the BOP revoked "157 days of credits" that it had previously awarded. Thus, he asks the Court to reinstate those credits. But, as the government puts it, this "is clearly a computation issue with BOP, not an issue for this Court to address under an extraordinary or compelling reasoning standard." ECF 1504 at 5.[5]

I agree with the government that the issue raised here does not constitute a basis for compassionate release. But, even if defendant were to file a writ of habeas corpus pursuant to 28 U.S.C. § 2241, his claim would fail.

A federal sentence to a term of imprisonment begins "on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). However, under federal law, in certain circumstances, a defendant is also entitled to credit for time spent in pretrial detention. *See* 18 U.S.C. § 3585(b).

But, under federal law, a federal prisoner may not receive credit against his federal sentence for earlier time spent in custody if that time has been credited to another sentence. *See* 18 U.S.C. § 3585(b); *United States v. Soles*, 336 Fed. App'x 287, 290 (4th Cir. 2009); *see also United States*

---

[4] As noted, at the time, the Court and counsel erroneously believed that federal detention began on August 9, 2019.

[5] Indeed, it appears that defendant did pursue an administrative remedy concerning this issue, albeit without success. ECF 1446-1 at 6.

*v. Tucker*, 321 Fed. App'x 307, 309 (4th Cir. 2009) (rejecting prisoner's claim for sentence reduction under § 3585(b) because record showed he already received credit for time served against state sentence, and therefore was not entitled to reduction of his federal sentence for that same time); *Sites v. Bureau of Prisons*, RDB-06-2145, 2006 WL 5164804 (D. Md. Dec. 21, 2006) (denying prisoner's claim for sentence reduction pursuant to § 3585(b) because he "received credit for that period of time against his state sentence").

Prior custody credit is governed by 18 U.S.C. § 3585(b). It provides (emphasis added):

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

**that has not been credited against another sentence.**

Accordingly, federal law does not permit double-counting, *i.e.*, awarding an inmate credit on a federal sentence for time that has already been credited against a state sentence. *See* 18 U.S.C. § 3585(b)(2); *see also Wilson*, 503 U.S. at 337 ("Congress made clear that a defendant could not receive double credit for his detention time"); *United States v. Brown*, 977 F.2d 574 (4th Cir. 1992) (concluding that a defendant may not receive credit against his federal sentence for prior custody time that has been credited against another sentence).

As indicated, at the time of sentencing in this case, defendant was serving a State sentence. And, this Court's sentence was imposed concurrent with that sentence.

Congress has delegated the authority to calculate a federal prisoner's period of incarceration and to provide credit for time served to the United States Attorney General. In turn,

the Attorney General exercises that duty through the BOP. *See United States v. Wilson*, 503 U.S. 329, 334-35 (1992) (citing 18 U.S.C. § 3585).

Here, defendant was sentenced to serve six years in a Maryland State Court. That sentence was imposed prior to the sentence imposed in this case. Where, as here, an inmate has been sentenced by federal and state authorities, the sovereign that arrested him first acquires and maintains "primary jurisdiction" until the sentence imposed by that sovereign has been satisfied. *See United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998) (explaining principle of primary jurisdiction as set forth in *Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922)). As best I can determine, defendant has received the pretrial credit in this case to which he is entitled.

## IV. Conclusion

For the reasons stated, I shall deny the Second Motion. An Order follows.


Date:   December 12, 2024                                   /s/
                                                    Ellen L. Hollander
                                                    United States Senior District Judge